ON the 17th of December, 1 814, Henry Chapezesold to Henry and John Lucas 115 acres of land, in Nelson county,being the twotracts he inherited from his father, one of which, containing 48§ acres, was purchased of Felix Grundy, and the other of sVilliarn Owens ; and. Chapeze, agreed to make a good and sufficient deed therefor, as soon as he should obtain a title from Grundy’s heirs, there being a suit depending for that purpose; and he further covenanted to deliver to the Lu-cases, full and peaceable possession of the premises oh the iOthof March following, and they bound themselves to pay to Chapeze 8 00. of which 100 was paid in a bond assigned to him, 400 to be paid the said 10th of March following, before possession was given, and 400 on the 10th day of March 18 i6 ; and they agreed that the payments should be punctually made and that there should be no withholding of them for want of the deed being made. Tine Lucases not having made the last payment, Chapeze brought suit therefor and recovered judgment at law, to enjoin which they filed their bill; in which, after setting forth the contract as in substance before stated, they allege that at the time of the contract they knew very little about the state of the title : That they have since paid $50© of the price, and that on the 15th of June 1S16, they had the last payment of 8400 ready, arid still have it; “ but that they have been informed and believe, that the title is in *32 dispute, and that Chapeze nor his ancestor never had' a fair title to the land, particularly that part of it said j)e cjajmp(| Ullder William Owens.” They charge “ that no steps have been taken by Chapeze to perfect his legal title; that on the contrary, he has abandoned the state, and 1 he suit which he assured them would shortly be decided and give him a legal title ■; and they pray that the collection of the money may be enjoined without interest or costs, until Chapeze shall execute a deed of convey anee, after the court shall be satisfied there exists no defect in the title.”
Thepropriet01'tl)etiUe to landf who has ced a suit for oftheTegairy title, sells his claim and agrees to as he shall obtain thelegal title. paymen^of {¡he purchase morey isfised and it is the pui-cka-y ser that pay. shall heid^o^the ground of'the vender’s not bein& aW?to the^mrchas& money shall become due. tíÓnS ifob^* tained with-out misreyEecs„Int^li0ft met,t3'isv s!k?. In such case,' the duty to ^rosec^1" the^uirivitfe reasonable diligence,
*32 2. Chapeze,in his answer,admits the sale of the land by him upon the terms stated in the bill, and that the payments have been made, except the last, for which he has recovered judgment. He admits too, that he has removed to the state of Ohio; but he alleges that the Lucases knew that be* sold with an intention of leaving this state, and of advancing his fortune in some other country. He denies that they were ignorant of the state of the title, or that he represented to them that the suit against Grundy’s heirs would be decided in any definite period. He admits that the suit has not been determined as soon as he himself expected, but be insists that the suit has been, diligently and in good faith, prosecuted by counsel employed by him, and that the delay has been occasioned by the number of defendants, by deaths and removals, and other causes incident to suits in chancery ; and he offers to rescind the contract and refund the money he has received, upon equitable principles, if the Lucases are willing to do so.
3. The circuit court, upon a final hearing, dismissed the bill and dissolved the injunction with damages and costs, and the Lucases have appealed to this court. The decree of the circuit court, we think, is correct, can perceive no principle upon which, under the circumstances of this case, the appellants canberelieve(^- Their agreement not to withhold the payments on account of tiic deed not being made, was most ob-vieusly intended to prevent them from doing that which y are attempting to effect by the suit, and to grant them the relief they ask, would be contrary both ta the letter and the spirit of that agreement. That such an agreement, where fairly made, is obligatory and ought to be observed with good faith, we can see no reason to doubt. If, indeed, it be procured by fraud *33 dr imposition, it may be disregarded; or annulled by a court of equity, as any other agreement might be which was procured by the same means. But there is, in this case, no sufficient ground for imputing fraud to the appellee in procuring the agreement.
His intention to remove from the state, as well as the knowledge of that intention by the appellants, is presumable, from the circumstance of his selling the land on which he lived. He must have intended to remove somewhere, and they do not allege any con. cealment or misrepresentation by him upon that sub ject; and of the existence of the dispute in the title, and the pendency of the suit for its adjustment, they cannot pretend ignorance; for the terms of their contract manifest their knowledge of these facts. There is, therefore, no ground for imputing either the sup press ion of the truth or the suggestion of a falsehood to the appellee, in procuringthe agreement in question,
4. It was certainly his duty, under the agreement, to prosecute the suit pending for the adjustment of title, with reasonable diligence; but there is, upon subject, no evidence of any culpable negligence. delay In its determination may be accounted for from the nature of the suit and the parties to it.
The decree must be affirmed with costs and damages upon the damages.